**SHEREE D. WRIGHT (**AZ SBN# 035265)
IBF Law Group, PLLC
3101 N. Central Ave, Suite 1250
Phoenix, Arizona 85012
Telephone: (602) 833-1110
Facsimile: (602) 800-5701
E-Mail: sheree@ibflaw.com

**CORTNEY E. WALTERS** (*pro hac vice* pending)
The Law Office of Cortney E. Walters, PLLC
2719 Hollywood Blvd., Suite A-1969
Hollywood, FL 33020
Telephone: (954) 874-8022
Facsimile: (954) 889-3747
E-Mail: cwalters@cewlawoffice.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Jason Cope, an individual,<br><br>        Plaintiff,<br><br>vs.<br><br>Suns Legacy Partners, LLC, an Arizona Limited Liability Company; JOHN DOES 1-5; JANE DOES 1-5; BLACK CORPORATIONS 1-5; and WHITE PARTNERSHIPS 1-5,<br><br><br>        Defendants, | Case No.:<br><br><br>**COMPLAINT**<br><br>**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE** |

Plaintiff Jason Cope (hereinafter "Plaintiff" or "Mr. Cope"), by and through his undersigned counsels, for his complaint alleges as follows:

COMPLAINT PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE - 1

## JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 623 of the Age Discrimination in Employment Act (ADEA), and 29 U.S.C. § 216(b) of the Fair Labor Standards Act (FLSA), as the case involves claims of age discrimination, retaliation, misclassification, and unpaid wages.

2.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as Defendant Suns is subject to personal jurisdiction in this district, given that Arizona is both its principal place of business and the state of its incorporation. Additionally, venue is proper under 28 U.S.C. § 1391, as the acts giving rise to the claims occurred within this judicial district.

3.  Upon belief, all fictitious Defendants were residents of Maricopa County, State of Arizona; and/or were organized and existing under the laws of Arizona and doing business in the State of Arizona; and/or were foreign corporations, businesses, etc., qualified to do business within the State of Arizona, and actually doing business therein on the date of the discrimination alleged herein.

## PARTIES

4.  Plaintiff, Jason Cope is an individual residing in Maricopa County, Arizona and is an employee of Suns Legacy Partners, LLC at all relevant times.

5.  Defendant Suns Legacy Partners, LLC (hereinafter "Defendant Suns"), is a

corporation engaged in business operations in Maricopa County, Arizona, and was Plaintiff's employer as defined under 29 U.S.C. § 203(e)(1) of the Fair Labor Standards Act (FLSA).

6.   Defendant Suns, John Does 1-5, Jane Does 1-5, Black Corporations 1-5, and White Partnerships 1-5 (hereinafter "fictitious defendants") were, at all times material herein, principals and/or employers of one another and were acting as agents, servants, or employees within the scope of their agency or employment. As soon as their true names become known, Plaintiff will amend this Complaint accordingly. Said fictitious defendants should be held liable to Plaintiff for their actions and the actions of any affiliated or subsidiary entity under their control under the theories of respondeat superior, agency, equitable estoppel, and other applicable law.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.   On January 22, 2025, Plaintiff, in compliance with the procedural requirements set forth under the applicable laws, filed a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC). This charge outlined Plaintiff's claims of unlawful age discrimination and retaliation, which form the basis of the present lawsuit. Plaintiff diligently followed all necessary steps and deadlines required to initiate the charge, ensuring the proper documentation was submitted to the EEOC for review.

8.   On January 29, 2025, Plaintiff received a Notice of Right to Sue from the EEOC, which

formally authorized Plaintiff to file this action in court. Plaintiff, having received the Notice, has filed this complaint within the statutory timeframe prescribed by law, ensuring full compliance with the procedural requirements for pursuing this claim in the appropriate court of law. (*See* **Attachment A**)

## FACTUAL ALLEGATIONS

9.  Plaintiff, a forty-six-year-old (46) male, has been employed by Defendant Suns since 2009, with his employment continuing to the present day. Throughout his tenure, Plaintiff has held various roles, progressively demonstrating his technical acumen and dedication. Most recently, he served as a Senior Video Engineer on the SunsVision in-arena video team, where he played a pivotal role in overseeing and executing complex game-day productions and live event broadcasting. Plaintiff's contributions have been integral to the smooth operation and success of these high-profile events, yet despite his proven track record, he has been subjected to inequitable treatment by Defendant Suns.

10. From 2009 to 2023, Plaintiff was classified as an employee of Defendant Suns, and during this time, he was entitled to the full range of benefits and protections afforded to employees under both company policy and applicable labor laws. However, in 2023, following the acquisition of the organization by Mat Ishbia, Plaintiff, along with six other employees over the age of forty, were coerced into signing an independent contractor agreement, which unlawfully reclassified him and the other employers over forty, from an employee to an independent contractor, a drastic and unjustified alteration of his status.

COMPLAINT PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE - 4

This change was implemented without proper justification and in direct contravention of Plaintiff's long-standing employment status and entitlements.

11. On November 9, 2023, Greg Ralbovsky, Director of Game Production, provided Plaintiff with the independent contractor agreement via email, demanding that Plaintiff review and sign the document by November 16, 2023. This brief and unreasonable deadline, coupled with the pressure to comply, undermined Plaintiff's ability to fully consider the ramifications of such a significant contractual shift.

12. The email from Greg Ralbovsky transmitting the independent contractor agreement included the following statement:

> *[Y]our experience scheduling and working games should not change. The administrative changes are as follows: You will now have to fill out, and submit, invoices for the work you do at the arena. You will have to submit a W9. Everyone, including our current contract employees, must sign and return a vendor agreement before you work your next game.*

13. The independent contractor agreement that Plaintiff was coerced into signing contained specific language stating that "game responsibilities and movements remain unaffected," which suggested that the scope of Plaintiff's work would remain unchanged. Only Plaintff's classification was altered, leaving Plaintiff without the legal rights and benefits he had previously enjoyed as an employee. The agreement further stated that "contractors have no right and will not claim any benefit based on employment through SunsVision," effectively denying Plaintiff his entitlement to healthcare, retirement benefits, and other employee protections mandated by law and company policy.

COMPLAINT PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE - 5

Moreover, the agreement stipulated that "contractors shall have exclusive control and supervision over the methods and means used to perform applicable services," a provision that was never implemented. Defendant Suns continued to provide Plaintiff with all equipment, thereby denying him any real control or autonomy over how the work was performed, directly violating the spirit of the agreement.

14. Defendant Suns continued to control Plaintiff's work schedule, assignments, and tools, making clear that Plaintiff was an employee in substance despite the misclassification.

15. Specifically, Defendant Suns exerts significant control over Plaintiff's work, including imposing work hours and control over Plaintiff's shifts, assigning job responsibilities, determining work location, and requiring Plaintiff's attendance at mandatory team meetings, and a mandatory HR meeting. Furthermore, Defendant Suns provides all tools and materials necessary for Plaintiff's work and has reprimanded him when he attempts to use his own resources. Defendant Suns has also supplied Plaintiff with a company phone and email account, reinforcing the ongoing employer-employee relationship, and continues to monitor Plaintiff's performance as if he were an employee, rather than an independent contractor.

16. Plaintiff regularly worked 16-hour shifts exceeding 40 hours per week but was not compensated for overtime, in direct violation of the FLSA and Arizona wage laws.

17. Defendant Suns hired younger employees to perform the same duties as Plaintiff, while Plaintiff was denied employment benefits solely due to his age (46 years old), in violation of the ADEA.

18. To be specific, the newly hired employees were issued new company badges, granted access to the workplace, and provided with the full range of employee benefits, while Plaintiff was unjustly denied these same rights.

19. Plaintiff was also subjected to hostile work conditions, including forced relocation to an unsanitary parking garage workspace infested with rodents. For example, the presence of rodents, including frequent sightings of mice and their droppings in the workspace, exposed Plaintiff to health risks that could have been easily avoided.

20. The facility's condition reflected gross negligence, with Plaintiff being subjected to poor sanitation practices that placed him at risk for various illnesses, allergies, and respiratory issues caused by dust, mold, and poor air quality.

21. Plaintiff was subjected to age discrimination in violation of the Age Discrimination in Employment Act (ADEA), as well as retaliation for reporting such unlawful practices, in violation of 29 U.S.C. § 623(d) of the ADEA. This treatment was part of a deliberate and sustained effort by Defendant Suns to marginalize and discriminate against Plaintiff based on his age and subsequent complaints regarding the inequitable treatment he was subjected to.

22. Specific acts of discrimination and retaliation include but are not limited to the following:

   a. Plaintiff was subjected to a hostile and discriminatory work environment when Tony, an audio-visual technician and one of the newly hired and much younger employees, approached Plaintiff and made a derogatory

comment: ***"Jesus fucking Christ, do you have to be white and forty to get any respect in this place?"*** This blatant and offensive remark was made in front of other employees, and Plaintiff, deeply offended, immediately informed Tony that such behavior was entirely unacceptable particularly regarding his age, as there was no justification for it to be mentioned. Including age in the conversation was entirely irrelevant and served no legitimate purpose.

b.   In response to this discriminatory comment, Plaintiff took swift and appropriate action by formally reporting the incident to his direct supervisor, Greg Ralbovsky. It is likely that Greg, either unable or unwilling to handle the matter himself, passed the issue along to Joy Harper. Subsequently, Joy Harper, the Human Resources Business Partner, contacted Plaintiff by email in August 2024, instructing him to attend a meeting to discuss the matter.

c.   Plaintiff complied with this request and attended an in-person mandatory meeting with Ms. Harper and Greg Ralbovsky. During this meeting, Ms. Harper callously characterized Plaintiff as being "*disgruntled about the conversion*" to an independent contractor and made no effort to address the serious nature of the discrimination complaint. Instead, Ms. Harper retaliated by informing Plaintiff that he would be placed on

suspension, an action that was clearly motivated by Plaintiff's protected activity in reporting the discriminatory behavior.

d. Plaintiff, feeling deeply offended by the situation, inquired about the necessity of attending a mandatory HR meeting given his classification as an independent contractor. He pointed out that independent contractors are generally not subject to such meetings, which are typically reserved for employees. Furthermore, Plaintiff raised concerns regarding the decision to place him on suspension, emphasizing that suspension is an action ordinarily reserved for employees, not independent contractors. This series of events further underscores the improper classification of Plaintiff's employment status and highlights the inconsistency between his treatment and that of a true independent contractor.

23. Plaintiff engaged in protected activity by reporting age discrimination and opposing unlawful employment practices. In direct retaliation for these actions, Defendant Suns suspended Plaintiff for a period of approximately three months, further exacerbating the harm caused by their discriminatory and retaliatory behavior. This suspension was a clear attempt to punish Plaintiff for exercising his legal rights, in violation of federal law. Notably, this retaliatory action is not an isolated incident, but part of a broader pattern perpetuated by Defendant Suns' Human Resources department. Other individuals who have reported discrimination within the company have also faced retaliation, including

being suspended or placed on a Performance Improvement Plan (PIP) as a means to discourage and penalize employees who speak out against unlawful treatment.

## CLAIMS FOR RELIEF

### Count I
### Independent Contractor Agreement is Void and Unenforceable

24. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

25. Plaintiff has been an employee of Defendant Suns for 16-years, from 2009 to present.

26. In 2023, following the acquisition of the organization by Mat Ishbia, Plaintiff was coerced into signing an Independent Contractor Agreement that reclassified him from a W-9 employee to a 1099 independent contractor.

27. The Independent Contractor Agreement, titled "Summary of Vendor Relationship," asserts that Plaintiff was an independent contractor and not an employee of SunsVision. It further states that Plaintiff "shall have exclusive control and supervision over the methods and means" of performing services, that he "will not be treated as an employee of SunsVision for federal, state, or local tax or any purpose," and that he has "no right to and will not claim any benefit based on employment through SunsVision including, without limitation, health, sickness, accident coverage, life insurance, disability benefits, accidental death and dismemberment coverage, unemployment insurance coverage, workers' compensation coverage, vacation or retirement benefits."

28. In reality, Plaintiff continued to work under the same conditions as he had before the

agreement, performing the same duties under Defendant Suns' direct control. Defendant Suns dictated Plaintiff's work schedule, assigned tasks, required attendance at team meetings, an HR meeting, and provided all necessary tools and equipment. Defendant Suns retained exclusive control over Plaintiff's work methods and performance, contradicting the agreement's assertion that Plaintiff had autonomy over how services were performed.

29. Defendant Suns' misclassification of Plaintiff was an intentional attempt to evade wage laws and employment protections, including the Fair Labor Standards Act (FLSA)[1] and Arizona labor laws. The agreement was designed to strip Plaintiff of his legal rights, despite the fact that his working conditions did not change.

30. The Independent Contractor Agreement was presented under coercion and false pretenses. Plaintiff was given only a one-week deadline to sign the agreement and was informed that failure to sign would result in his inability to continue working. Defendant Suns misrepresented the impact of the agreement by claiming that only "administrative" aspects would change while in reality, the agreement stripped Plaintiff of his benefits and employment protections.

---

[1] The Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq., establishes minimum wage, overtime pay, recordkeeping, and child labor standards affecting employees in the private sector and government. Under the FLSA, employment status is determined based on the "economic reality" of the working relationship rather than contractual labels, meaning that misclassified workers may still be entitled to the protections afforded to employees. See *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 301 (1985) (holding that economic realities, not contractual language, determine employment status under the FLSA).

COMPLAINT PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE - 11

31. Plaintiff lacked a genuine opportunity to negotiate or refuse the agreement, making his acceptance neither voluntary nor knowing. The contract was imposed unilaterally and obtained through economic duress by threatening Plaintiff's continued employment.

32. Defendant Suns cannot contractually alter the legal reality of Plaintiff's employment status. Under federal and state employment laws, a worker's classification is determined by the actual working relationship—not by an employer's unilateral designation. Defendant Suns' continued control over Plaintiff's work establishes that he was an employee, regardless of the agreement's language.

33. Because the Independent Contractor Agreement was coercively imposed, based on misrepresentation, and in violation of public policy, Plaintiff seeks a declaratory judgment that:

    a.   The Independent Contractor Agreement is null and void ab initio;

    b.   Plaintiff was and remains an employee of Defendant Suns under the law;

    c.   Defendant Suns' attempt to misclassify Plaintiff has no legal effect; and

    d.   Plaintiff is entitled to all employee benefits and protections under federal and state labor laws.

34. Plaintiff respectfully requests that this Court declare the agreement unenforceable and order Defendant Suns to restore Plaintiff's classification as an employee with all associated rights, wages, and benefits.

## Count II
### Violation of the Fair Labor Standards Act (FLSA) - Misclassification and Unpaid Wages

35. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

COMPLAINT PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE - 12

36. Plaintiff has been employed by Defendant Suns since 2009 and has consistently delivered high-quality work as a Senior Video Engineer. Over the course of his tenure, Plaintiff has been integral to the SunsVision in-arena video team, playing a key role in game-day production and live event broadcasting. Despite the critical nature of his role, Defendant Suns intentionally misclassified Plaintiff as an independent contractor to avoid paying overtime wages and employee benefits, violating the FLSA.

37.  The agreement presented to Plaintiff explicitly stated that the only change would be his classification, assuring him that his job responsibilities and the scope of his work would remain identical. However, these representations were nothing but deceitful tactics to avoid the legal obligations owed to Plaintiff. The reality is that Plaintiff continued to work under the exact same conditions, with the same duties, responsibilities, and schedule, yet was denied the benefits, overtime pay, healthcare, retirement plans, and protections he would have been entitled to as an employee.

38. Plaintiff remained under Defendant Suns' control, was provided equipment, and had no real autonomy over his work, establishing an employer-employee relationship under the Economic Realities Test.[2]

_____

[2] The Economic Realities Test is used to determine whether a worker is an employee or an independent contractor under the Fair Labor Standards Act (FLSA). The test considers multiple factors, including the degree of control the employer exercises over the worker, the worker's opportunity for profit or loss, the level of skill required, the permanence of the working relationship, and whether the worker's service is integral to the employer's business. See *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 301 (1985).

COMPLAINT PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE - 13

39. Under the Economic Realities Test, Plaintiff was clearly an employee, not an independent contractor, as Defendant Suns exercised significant control over his work, provided all necessary tools, and did not allow Plaintiff to operate independently:

   a. Defendant Suns determined Plaintiff's work schedule, required him to attend mandatory HR meetings, and monitored his performance, leaving him with no meaningful autonomy;

   b. Defendant Suns provided Plaintiff with all necessary tools, including a company phone, computer, and email account. Plaintiff was not permitted to use his own equipment and was reprimanded when he attempted to do so, further demonstrating his employee status;

   c. Plaintiff had no ability to negotiate his pay, control his earnings, or take on outside contracts. His compensation was dictated by Defendant Suns, just as it was before his misclassification;

   d. Plaintiff worked for Defendant Suns from 2009 to present, making his role permanent rather than temporary. Independent contractors typically work on a project basis, which was not the case here; and

   e. Plaintiff's role was integral to SunsVision's game-day and live event productions, which are essential to Defendant Suns' operations. His work was not an independent service but a critical function within the organization.

40. Defendant Suns continues to provide Plaintiff with all necessary tools, equipment, and

COMPLAINT PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE - 14

materials, dictating his methods of performance and requiring him to follow rigid work hours and responsibilities. Plaintiff is denied any meaningful control or autonomy over the performance of his duties, a hallmark of true independent contractor status. Instead, Defendant Suns continues to exert a level of control over Plaintiff's work consistent with that of an employee.

41. Because Defendant Suns misclassified Plaintiff despite maintaining complete control over his work conditions, Plaintiff was unlawfully deprived of overtime wages, benefits, and legal protections afforded under the FLSA.

42. Additionally, the misclassification violates the Internal Revenue Code (IRC)[3], which mandates proper classification for tax purposes, including withholding of income taxes, Social Security, and Medicare contributions. Plaintiff's treatment also contravenes the Employee Retirement Income Security Act (ERISA)[4], which provides employees with the right to participate in retirement plans and receive employer-sponsored benefits.

43. Plaintiff seeks unpaid wages, overtime compensation, liquidated damages, and attorney's fees and costs under 29 U.S.C. § 216(b).

-------------------

[3] The Internal Revenue Code (IRC) requires proper worker classification to ensure compliance with federal tax obligations, including income tax withholding, Social Security (FICA), and Medicare contributions. See 26 U.S.C. §§ 3121(d), 3401(c). Misclassification can result in significant tax liabilities and penalties for employers.
[4] The Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq., establishes minimum standards for employer-sponsored benefit plans, including retirement and health benefits. Misclassified workers may be unlawfully excluded from participating in such plans, violating ERISA protections. See *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992).

## Count III
### Violation of 29 U.S.C. § 621 of the Age Discrimination in Employment Act

44. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

45. Plaintiff, Mr. Cope, is a forty-six-year-old (46) male employee who has dedicated over a decade of his professional career to Defendant Suns. Despite Plaintiff's proven experience, competence, and commitment, Defendant Suns subjected Plaintiff to discriminatory treatment based on his age, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623.[5]

46. Beginning in 2023, Plaintiff was unlawfully and unfairly reclassified as an independent contractor. During the same period, Defendant Suns employed substantially younger individuals to perform the exact same job duties Plaintiff had been performing. These younger individuals, who lacked Plaintiff's experience, were classified as employees and provided with the full range of benefits, including new workplace access badges and health benefits, while Plaintiff, a more experienced worker, was intentionally stripped of his employee benefits, reclassified, and subjected to inferior treatment. It is alleged and believed that Plaintiff is not the only individual who has been unfairly pushed out. Six other

---

[5] The Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., prohibits employers from discriminating against employees who are 40 years of age or older in hiring, termination, compensation, and other terms and conditions of employment. See 29 U.S.C. § 623(a)(1) (making it unlawful for an employer to discriminate against an individual "because of such individual's age"). The ADEA applies to employers with 20 or more employees and is enforced by the Equal Employment Opportunity Commission (EEOC).

COMPLAINT PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE - 16

individuals over the age of forty, many with disabilities and other health issues, who were also part of SunsVision, have faced similar discriminatory treatment. It is well known that as employees age, the cost of their benefits increases, and it is believed that Defendant Suns sought to eliminate older workers in favor of younger, less expensive employees. This pattern of discrimination is part of a broader effort to reduce the company's costs at the expense of experienced employees, including those with health challenges, thereby further demonstrating Defendant Suns' discriminatory actions and ageist practices.

47. Defendant Suns' preference for younger employees over Plaintiff demonstrates a clear pattern of age-based employment discrimination under 29 U.S.C. § 623(a).

48. This disparate treatment based on Plaintiff's age is not only a blatant violation of the ADEA but also represents a calculated effort by Defendant Suns to marginalize older workers in favor of younger, less experienced employees. Defendant Suns' actions are a stark example of unlawful age discrimination, intended to deprive Plaintiff of his equal employment rights.

49. Defendant Suns claims Plaintiff was reclassified for 'business reasons,' yet Defendant Suns retained younger employees in the same roles with full employment benefits, demonstrating that age was a determining factor in Plaintiff's misclassification.

50. Defendant Suns' actions resulted in Plaintiff suffering economic harm, including loss of wages, benefits, promotional opportunities, and future employment security.

51. Plaintiff seeks back pay, front pay, liquidated damages, and reinstatement under the

COMPLAINT PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE - 17

ADEA, as well as any other appropriate relief to compensate for Defendant Suns'
discriminatory actions.

## Count IV
### Retaliation Under 29 U.S.C. § 623(d) of the ADEA

52. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

After enduring repeated discriminatory treatment based on his age, Plaintiff, exercised his
right to oppose unlawful employment practices and raised a complaint regarding the age
discrimination he was experiencing. This complaint, which was made in good faith,
specifically addressed the inappropriate and discriminatory comment made by a coworker,
Tony, a newly hired audio-visual technician and significantly younger employee. Tony
approached Plaintiff and said, ***"Jesus fucking Christ, do you have to be white and forty
to get any respect in this place?"*** This offensive comment, which was both ageist and
insensitive, was not an isolated incident but part of a broader, hostile, and discriminatory
work environment that Plaintiff was forced to endure. In light of this, we have reason to
believe that Tony may himself have grounds for a discrimination claim against Defendant
Suns, as his comment and behavior may reflect an underlying pattern of discriminatory
treatment that extends beyond Plaintiff's own experience. It is plausible that Tony's
attitudes and comments were influenced by an environment in which discriminatory
conduct was either implicitly tolerated or fostered, further highlighting the pervasive and
toxic atmosphere within Defendant Suns.

53. In response to this discriminatory remark, Plaintiff immediately confronted Tony,

informing him that his comments were inappropriate and unacceptable. Plaintiff then made a complaint to his supervisor, Greg Ralbovsky, to ensure Defendant Suns was aware of the unlawful conduct and would take appropriate corrective action. Rather than addressing the discriminatory comment and taking necessary disciplinary measures against Tony, Defendant Suns retaliated against Plaintiff in direct violation of 29 U.S.C. § 623(d).[6] In response to Plaintiff's complaint, Joy Harper, the Human Resources Business Partner, contacted Plaintiff by email and scheduled a meeting on August 7, 2024, to discuss the matter. During this meeting, Ms. Harper minimized the significance of Plaintiff's concerns, dismissing the issue as nothing more than Plaintiff being "disgruntled" about his reclassification as an independent contractor. This response was not only dismissive but demonstrated a complete disregard for the severity of Plaintiff's complaint regarding age discrimination and unlawful conduct.

54. Plaintiff engaged in protected activity when he reported Defendant Suns' age-based discriminatory conduct and objected to his unlawful misclassification as an independent contractor.

_____

[6] The Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(d), prohibits employers from retaliating against employees for opposing age discrimination or participating in an investigation or proceeding under the ADEA. Specifically, § 623(d) makes it unlawful for an employer to "discriminate against any of his employees or applicants for employment" because they have opposed any practice made unlawful by the ADEA or participated in any related complaint, investigation, or proceeding. Retaliatory actions, such as suspensions, terminations, or other adverse employment decisions, taken in response to an employee's protected activity, constitute a violation of federal law.

55. Following this retaliatory treatment, Defendant Suns escalated their retaliation by placing Plaintiff on suspension—a blatant attempt to punish him for his protected activity. Plaintiff's suspension, which lasted approximately three months, was unjustified, without cause, and a clear violation of his rights. This suspension was directly linked to Plaintiff's complaint and was part of a deliberate effort by Defendant Suns to retaliate against Plaintiff for opposing discriminatory practices. Notably, this was not an isolated incident but rather part of a broader pattern of retaliation perpetuated by Defendant Suns and its Human Resources department. Other employees who have reported discrimination or engaged in protected activity have similarly faced adverse employment actions, including unwarranted suspensions and placement on Performance Improvement Plans (PIPs) as a pretext to justify further retaliation. Defendant Suns' actions were clearly intended to intimidate, silence, and deter Plaintiff and others from asserting their rights, sending a message that individuals who report discrimination would be penalized rather than protected.

56. Plaintiff's suspension, in addition to the emotional and professional harm it caused, had a severe negative impact on his financial well-being – especially being a single father of two. During his suspension, Plaintiff was deprived of income for an extended period, which caused significant financial distress and emotional suffering. This retaliation not only harmed Plaintiff's career and reputation but also inflicted long-term emotional and psychological harm, causing him undue stress and anxiety.

57. Upon information and belief, other employees who raised concerns regarding

COMPLAINT PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE - 20

discrimination were similarly retaliated against, demonstrating a pattern of unlawful retaliation by Defendant Suns.

58. Defendant Suns' retaliatory actions violate 29 U.S.C. § 623(d), which prohibits any employer from taking adverse action against employees who report discrimination or assert their rights under the ADEA.

59. As a direct result of this retaliation, Plaintiff has suffered lost wages, emotional distress, and reputational harm.

60. Plaintiff seeks compensatory damages, punitive damages, reinstatement, and injunctive relief to ensure Defendant Suns is held accountable for its unlawful retaliation.

## Count V
## Violation of Arizona Wage Laws

61. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

62. Arizona law provides strict protections for employees to receive proper wages and overtime compensation under A.R.S. § 23-362, et seq.[7]

63. Defendant Suns willfully violated Arizona wage laws by failing to compensate

---

[7] The Arizona Minimum Wage Act, A.R.S. § 23-363 et seq., establishes the state's minimum wage requirements. While the Act itself does not expressly regulate overtime pay, Arizona employers are still subject to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207, which mandates overtime pay for non-exempt employees who work more than 40 hours in a workweek. Employers who misclassify workers as independent contractors to evade minimum wage and overtime obligations may violate both Arizona wage laws and the FLSA.

COMPLAINT PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE - 21

Plaintiff for overtime hours worked and by improperly denying him employee benefits and protections.

64. Plaintiff was denied wages he was legally entitled to, including overtime pay for hours exceeding 40 per week.

65. As a result, Plaintiff seeks back pay, statutory penalties, and liquidated damages under Arizona state law to recover his lost earnings and ensure compliance with wage laws.

## Count VI
## Intentional Infliction of Emotional Distress (IIED)

66. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

67. Defendant Suns engaged in conduct that was not only extreme and outrageous but intentionally designed to cause severe emotional distress to Plaintiff. The actions and treatment Plaintiff endured—such as the forced reclassification to independent contractor status, the retaliatory suspension, and the ongoing discriminatory behavior—went far beyond the realm of acceptable employment practices and are classified as extreme and outrageous under the law. Defendant Suns' actions were not mere negligence or poor judgment; they were intentional and designed to cause harm.

68. Plaintiff was subjected to a continuous pattern of harassment, mistreatment, and emotional distress that directly resulted from Defendant Suns' reckless and willful conduct. This mistreatment included being stripped of his employee benefits, placed in unsanitary and degrading work conditions, subjected to the harsh and discriminatory comment made by Tony, a younger employee, and subjected to retaliatory actions after Plaintiff rightfully reported the discrimination. Defendant Suns' actions were calculated and designed to

COMPLAINT PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE - 22

humiliate Plaintiff, subjecting him to less favorable treatment because of his age and opposition to unlawful practices. The actions taken against Plaintiff were intentionally cruel and were aimed at forcing Plaintiff to accept inferior treatment, demoralizing him and causing significant harm to his well-being.

69. A particularly disturbing element of the mistreatment Plaintiff was subjected to involved being forced to work in conditions known to be unsanitary and unsafe. Defendant Suns knowingly placed Plaintiff and others in a rat-infested environment, where rodents were present and posed significant health risks. Despite the dangerous conditions, Defendant Suns continued to serve food in this infested area, a blatant disregard for basic health and safety protocols. To make matters worse, it is well known that serious diseases, including rodent-borne illnesses, have resulted from such unsanitary environments.

70. Employers are legally obligated to maintain workplaces that are free from health hazards, including those posed by rodent infestations. The Occupational Safety and Health Administration (OSHA) mandates that all enclosed workplaces be constructed, equipped, and maintained to prevent the entry or harborage of rodents, insects, and other vermin. Upon detection of such pests, employers must implement a continuous and effective extermination program.[8]

_____

[8] Employers are required under the Occupational Safety and Health Administration (OSHA) regulations to maintain workplaces free from recognized hazards, including rodent infestations. OSHA's sanitation standard (29 CFR § 1910.141(a)(5)) mandates that workplaces must be constructed, equipped, and maintained to prevent the entrance or harborage of rodents, insects, and other vermin. Upon detection, employers must

COMPLAINT PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE - 23

71. Rodent infestations present significant health risks to employees, as rodents can transmit diseases such as hantavirus through their droppings, urine, or saliva. In situations with heavy infestations or tasks that may aerosolize infectious materials, respiratory protection may be necessary, adhering to OSHA's Respiratory Protection standard (29 CFR 1910.134).[9]

72. Failure to address rodent infestations not only jeopardizes employee health but also constitutes a violation of OSHA's sanitation standards. Employers are required to construct, equip, and maintain workplaces to prevent rodent entry, and upon detection, must implement effective extermination programs.

73. Defendant Suns' actions in allowing employees to work and eat in such dangerous, rat-

_____

implement a continuous and effective extermination program. Failure to do so may result in serious health risks, as rodents can transmit diseases such as hantavirus through their droppings, urine, or saliva. Employers must also comply with OSHA's Personal Protective Equipment (PPE) standard (29 CFR § 1910 Subpart I) and, in severe infestations, the Respiratory Protection standard (29 CFR § 1910.134) to safeguard workers. See OSHA, *Sanitation: Vermin Control*, available at https://www.osha.gov/laws-regs/standardinterpretations/1992-07-20-2.

[9] OSHA's Respiratory Protection standard (29 CFR 1910.134) requires employers to provide appropriate respiratory protection when workers are exposed to airborne contaminants, including particles from rodent droppings, urine, or nesting materials, which may carry diseases such as hantavirus. In workplaces where rodent infestations present potential respiratory hazards, employers must implement proper hazard assessments, provide personal protective equipment (PPE), and ensure compliance with safety measures to mitigate exposure. See OSHA, *Respiratory Protection Standard*, 29 CFR 1910.134, available at https://www.osha.gov/laws-regs/regulations/standardnumber/1910/1910.134.

infested conditions shows not only a lack of regard for Plaintiff's health and safety but also a callous and reckless attitude toward the well-being of their workforce.

74. The conduct of Defendant Suns was reckless, callous, and demonstrated blatant disregard for Plaintiff's well-being. As a direct result of the Defendant Suns' actions, Plaintiff has suffered severe emotional distress, including anxiety, humiliation, depression, and a significant decline in his overall quality of life. The emotional suffering was compounded by the physical toll the hostile and unsanitary work conditions took on Plaintiff's health, further exacerbating his distress. Plaintiff's mental and emotional suffering, caused by Defendant Suns' outrageous actions, has been long-lasting, and he continues to experience the effects of the mistreatment.

75. The conduct of Defendant Suns was not just unreasonable or inappropriate; it was intentionally designed to cause harm, retaliating against Plaintiff for asserting his rights and for opposing age-based discrimination. Defendant Suns acted with full knowledge of the severe emotional distress its actions would cause and proceeded with its mistreatment without remorse. These actions meet the necessary legal requirements for an IIED claim, as follows:

     a. Extreme and Outrageous Conduct: Defendant Suns' conduct was extreme, outrageous, and beyond the bounds of decency, as it involved not only discriminatory practices but also placing employees in dangerous, rat-infested work conditions and continuing to serve food in that environment, despite the known health risks. This conduct was extreme to the point of recklessness.

b. Intent to Cause Emotional Distress: Defendant Suns' actions were intentional and calculated to cause harm to Plaintiff. The treatment Plaintiff received was designed to humiliate, belittle, and punish him for asserting his rights and opposing unlawful practices, while also exposing him to potentially deadly health risks.

c. Severe Emotional Distress: As a direct result of Defendant Suns' conduct, Plaintiff has suffered severe emotional distress, including anxiety, depression, and emotional turmoil, as well as the associated physical toll caused by the stressful and hostile work environment.

d. Causation: The severe emotional distress suffered by Plaintiff was directly caused by the outrageous conduct of Defendant Suns and was a foreseeable consequence of Defendant Suns' wrongful actions.

76. As a result of Defendant Suns' extreme and outrageous conduct, Plaintiff has endured and continues to endure significant emotional and psychological harm, which has caused both short-term and long-term damage to his well-being, career, and personal life. Defendant Suns' actions were intentional and reckless, causing Plaintiff severe emotional distress, anxiety, humiliation, and mental suffering.

77. Plaintiff experienced severe emotional distress, including anxiety attacks, loss of sleep, and a decline in work performance. Plaintiff's distress was so severe that he was forced to seek medical treatment/counseling.

78. As a result, Plaintiff seeks compensatory and punitive damages for the emotional

COMPLAINT PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE - 26

harm suffered due to Defendant Suns' intentional misconduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court grant the following relief:

A. Compensatory Damages: Plaintiff seeks an award of compensatory damages for all losses incurred as a result of Defendant Suns' unlawful actions, including but not limited to lost wages, salary, benefits, and other economic damages, as well as damages for emotional distress, mental anguish, and other non-economic harm caused by Defendant Suns' discriminatory and retaliatory conduct.

B. Liquidated Damages: Plaintiff requests the Court to award liquidated damages as permitted under the Age Discrimination in Employment Act (ADEA), which are intended to compensate Plaintiff for the willful nature of Defendant Suns' violations of the Act and to deter such unlawful conduct in the future.

C. Punitive Damages: Plaintiff seeks the imposition of punitive damages as allowed by applicable law, as a means of punishing Defendant Suns for its malicious, willful, and egregious conduct, and to serve as a deterrent to Defendant Suns' and others from engaging in similar unlawful behavior in the future.

D. Reinstatement: Plaintiff respectfully requests the Court to order reinstatement to the position from which Plaintiff was wrongfully misclassified.

E. Attorney's Fees and Costs: Plaintiff seeks an award of attorney's fees, expert fees,

COMPLAINT PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE - 27

litigation costs, and any other expenses incurred in bringing this action, as authorized by the ADEA, the FLSA, and other applicable statutes, in order to fully compensate Plaintiff for the financial burdens of prosecuting this case.

F.  Declaratory Relief:

    i.   Plaintiff seeks a declaration from the court that the independent contractor agreement is null and void as it was unlawfully imposed to circumvent wage laws, employee protections, and Plaintiff's rightful status as an employee. requests the Court to issue a declaration that Plaintiff

    ii.  Plaintiff seeks a declaration from the court that Plaintiff was, in fact, an employee of Defendant Suns and not an independent contractor, thus recognizing Plaintiff's rights and protections under federal employment law, including but not limited to the protections against age discrimination and retaliation.

G.  Any other relief this Court deems just and proper: Plaintiff further requests that the Court grants any other relief that it deems just, equitable, and proper under the circumstances, including any additional remedies that may be necessary to make Plaintiff whole and to ensure the fair and just resolution of this matter. Plaintiff also seeks any further relief that may be necessary or appropriate to prevent future violations of the law and to ensure Defendant Suns' compliance with applicable federal statutes governing age discrimination, retaliation, and wrongful employment practices.

## **JURY DEMAND**

Plaintiff respectfully demands a trial by jury on all issues.

COMPLAINT PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE - 28

**EXECUTED** this 12th day of March 2025.

**IBF LAW GROUP, PLLC**

By:    /s/ Sheree D. Wright_____
          Sheree D. Wright

**THE LAW OFFICE OF CORTNEY E. WALTERS, PLLC**

By:    /s/ Cortney E. Walters_____
          Cortney E. Walters

*Attorneys for Plaintiff*

COMPLAINT PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE - 29